STATE ex rel BURKE, Plaintiff, v. MARSO, Sheriff of Hughes County, Defendant.

(256 N. W. 257.)

(File No. 7738. Opinion filed September 17, 1934.)

*Martens & Goldsmith,* of Pierre, for Plaintiff.
*Will G. Robinson,* State's Atty., of Pierre, for Defendant.

POLLEY, J., On or about the 16th day of July, 1934, the state's attorney of Hughes county filed in the justice court of C. H. Anderson, a justice of the peace in and for said Hughes county, a complaint entitled State of South Dakota v. John Doe. This

complaint charged that said John Doe, for the purpose of reducing the amount of taxes he would be obliged to pay to the said Hughes county upon his moneys and credits, had on or about the 1st day of May, 1934, committed the crime of giving to the assessor of Hughes county a false and fraudulent list or statement of his said moneys and credits which he is required by law to list with said assessor. The complaint was made upon information and belief.

Said complaint then prayed that the said court would issue subpoenas requiring certain persons, upon the further demand of said state's attorney, to appear and submit to examination and legal disclosures touching upon the amount of moneys and credits, and particularly with regard to postal savings accounts which the said individuals might have. Thereafter, and on or about the 18th day of July, 1934, the state's attorney caused to be issued out of the said justice court a certain criminal subpoena dated that day, addressed to Walter H. Burke, the relator herein, and cashier of the Pierre National Bank. This subpœna commanded the said Walter H. Burke to appear before the said justice of the peace on the 19th day of July, 1934, to give evidence in a criminal action prosecuted by the state of South Dakota against John Doe and that he bring with him the financial records of the said bank showing the amount of certificates of deposit, savings, and checking accounts owned by various depositors in the said bank on the 1st day of May, 1934, and terminated with the following warning:

"Your failure to appear as herein required will render you liable to be punished as for criminal contempt."

At the time and place named in said subpoena the said Walter H. Burke, relator herein, appeared in said justice court, but did not bring with him the books, papers, and records named in the said subpoenas. He offered to produce any record or testify concerning any question asked in any proper proceeding and produce any records of the said bank of which he was cashier that he would be lawfully required to produce and inquired of the state's attorney whether he desired the records or the information concerning any particular person or specifically named persons. Whereupon the said state's attorney informed the said witness that it was his purpose and intention and he would ask the said witness under oath to produce in court all the ledger sheets of all the depositors of the said bank who resided in Hughes county, and that he would ask

him to name all of such depositors and the amount of money they had on deposit in the said bank on the 1st day of May, 1934.

Thereupon a continuance of said proceeding was agreed to until the 20th day of July, 1934, when the said Walter H. Burke again appeared in the said justice court but without producing or bringing with him the said records of the said bank showing the amount of certificates of deposit, savings, and checking accounts owned by the various depositors on the 1st day of May, 1934.

At some stage of the foregoing proceeding, the record does not disclose just when, the complaint that had been filed by said state's attorney was amended, and that, as so amended, the title of said complaint became State of South Dakota v. Three Hundred Sixty-Three Named Defendants. At that time said bank produced and presented to the court the following statement in writing:

### "Exhibit 'A.'

"With due respect to the court, not contumaciously or obstinately, but to secure an adjudication of the rights of the Pierre National Bank and its officers, employees and depositors and patrons, and to avoid any liability on the part of said Bank on account of divulging the status of any depositor's account, and on advice of counsel, I decline to produce all the records specified in the subpoena duces tecum for the following reasons:

" '1. The evidence requested under the subpoena constitutes an unreasonable search and seizure involving the constitutional rights of the said Bank, its officers and patrons in violation of the constitution of the United States and the State of South Dakota.

" '2. That the Pierre National Bank is not subject to the visitorial powers sought to be exercised in that said Bank is prohibited by Federal Statute (R. S. 5240; Feb. 19, 1875, C. 89, 18 Stat. 329; Dec. 23, 1913, C. 6, Sec. 21, 38 Stat. 271) from submitting its records under the proceedings now pending.

" '3. That the subpoena duces tecum served upon me and the requirements thereunder, as well as the interrogatories and the announced intention of the State's Attorney indicate that no particular action against any one or more specifically named persons is before the Court except one John Doe who has no account, certificate of deposit, savings account, check account or any credit in or with said bank; that the records, evidence required under the sub-

poena and attempted inquisition is not material to any issues before the court under any specific charge or charges against any one or more named person or persons, but the State's Attorney is by this proceeding and under the general subpoena, seeking a general or indiscriminate inspection and ransacking of all the books and records of said bank, which involve the private and confidential business and personal affairs of the corporation, its officers and hundreds of citizens who are the customers of said bank, who are not charged or suspected of any violation of the law; that the Court under the proceedings now pending, the general subpoena and the announced intention of the State's Attorney, has no jurisdiction to require the evidence sought.

"'4. That the proceeding is improper in that other specific statutory provisions exist to enable the County and its officers to gain the information sought.'

"I further state that I am willing to produce any records in my possession, and testify in response to any and all questions asked of me in any proper proceedings under legal subpoena or proper requirement of the court."

On the 24th day of July, 1934, the said witness again appeared before the said Justice of the peace, but without producing the books and records called for in the said subpoena and handed to and left with the said justice of the peace Exhibit B, which in all material respects is similar to Exhibit A.

The witness refused and continued to refuse to answer the questions put to him by the state's attorney, whereupon the court made the following order:

"The order of the court is that the witness be required to answer and not answering, is held in contempt of court and is at this time committed to the custody of the sheriff."

The court then made and entered the following formal order directed to the sheriff (omitting title):

"The offense of contempt of court having been committed by reason of the willful refusal of a witness to testify has been committed, and accusing Walter Burke thereof and the said Walter Burke having been before me on the 24th day of July A. D. 1934, and having been adjudged in contempt of court for failure to answer legal questions to him in due course propounded,

"You are therefore commanded, to receive the said Walter Burke into your custody and detain him until the further order of this court or until he shall be thence discharged by due course of law."

Thereupon the said witness was taken into the custody of the sheriff and at once petitioned this court for a writ of habeas corpus commanding the said sheriff to bring before the court the body of the said Walter H. Burke and show cause why he should not be released.

This proceeding, commonly known as a "John Doe" proceeding, was instituted under the provisions of section 4504, R. C. 1919, as amended by chapter 105, Session Laws of 1929. This section reads as follows:

"Section 4504. *Power to Subpoena and Examine Witnesses.* Whenever a complaint verified positively, or upon information and belief, by the Attorney General, State's Attorney, City Attorney or Federal Prohibition Agent is laid before any magistrate that a criminal offense has been committed in this state and asking for an investigation of the same, such magistrate shall issue his subpoena requiring any person he may deem proper to attend before him at the time and place mentioned in such subpoena and submit to an examination and give testimony concerning any violation of law about which he may be questioned. The testimony of such witness shall be reduced to writing by the magistrate or some person under his direction, and shall be signed and sworn to by the witness, and if the offense complained of appears to have been committed a warrant for the arrest of the offender shall be issued and further proceedings shall then be had as provided by law. No witness shall refuse to comply with such subpoena because his fee therefor has not been paid in advance and his attendance may be compelled by attachment as in the case of other witnesses."

This section constitutes what is commonly known as the "John Doe" law, and was enacted for the purpose, as appears upon its face, of being invoked in cases where a criminal offense has been committed but the name of the offender is unknown to the state's attorney. It serves no purpose, and is not intended to be used in cases, where the name of the offender is known to the prosecuting attorney. In such cases a prosecution may be commenced against

the offender in the first instance and there is no office to be performed by the John Doe law. The propriety of proceeding under the John Doe law was considered at great length in State v. Smith, 56 S. D. 238, 228 N. W. 240, 247. In the opinion in that case it is said: "Our law does not favor proceeding against a known defendant under a fictitious name."

The authorities on the subject are collected and reviewed in the opinion and further comment is wholly unnecessary.

In this case it is perfectly apparent from the showing made by the state's attorney that he knew the names of the offenders prior to the institution of the John Doe proceeding.

One of the reasons, and the only reason that merits consideration, assigned by the witness for refusing to answer the questions propounded to him by the state's attorney is that the court was without jurisdiction to make the order complained of. Whether or not the said justice of the peace had jurisdiction to issue the subpœna in this case at the time the same was issued, it is not necessary to determine. He certainly had no authority to proceed further with the matter, after it was disclosed by the amended complaint that the state's attorney knew the names of the offenders, and could not make an order upon which a contempt proceeding could be predicated.

It is elementary that before a person can be punished for contempt there must be some kind of a valid order, judgment, or adjudication determining that he is guilty of contempt (13 C. J. p. 80) which in this state must embrace or must be based upon clear and specific findings of fact (Hoffman v. Hoffman [1910] 26 S. D. 34, 127 N. W. 478, 30 L. R. A. [N. S.] 564, An. Cas. 1913A, 956; Krueger v. Kreuger [1913] 32 S. D. 470, 143 N. W. 368). In the instant case there is neither finding nor adjudication. It appears from the record that the witness having twice refused to answer certain questions on the ground that to answer might tend to incriminate him, the state's attorney said:

"It is quite obvious that the witness is going to refuse to answer questions pertaining to the proceeding and under that proceeding as instituted and I would therefore move the court that the witness be committed to the custody of the sheriff."

Whereupon the magistrate orally stated as follows:

"The order of the court is that the witness be required to answer and not answering, is held in contempt of court and is at this time committed to the custody of the sheriff."

The only writing of any sort that appears to have been signed in connection with the matter was a document entitled "Commitment—General Form," which was as follows:

"The State of South Dakota to any sheriff or constable of said county of Hughes county, greeting:

"The offense of contempt of Court having been committed by reason of the wilful refusal of a witness to testify has been committed, and accusing Walter Burke thereof and the said Walter Burke having been before me on the 24th day of July A. D., 1934 and having been adjudged in contempt of court for failure to answer legal questions to him in due course propounded.

"You are therefore commanded to receive the said Walter Burke into your custody and detain him until the further order of this Court or until he shall be thence discharged by due course of law. Witness my hand this 24th day of July A. D. 1934.

"[Signed] C. H. Anderson,<br>"Justice of the Peace."

It is obvious that this document is not and does not purport to be an adjudication. It assumes the existence of a valid order adjudging the petitioner to be in contempt of court and directs the sheriff to take the petitioner into custody, and does not attempt to adjudicate anything, although it does contain a recital (absolutely contrary to fact) to the effect that there had previously been an adjudication. See sections 2215 and 2217, R. C. 1919.

Not only are findings of fact and adjudication entirely lacking, but the commitment itself is entirely void. No time of imprisonment whatever is fixed. The mandate is to take the petitioner into custody "and detain him until the further order of this court or until he shall be thence discharged by due course of law." This amounts to a commitment for criminal contempt at the pleasure of the justice and is illegal and void for uncertainty and will not justify the officer in detaining the petitioner. Taylor v. Newblock (1897) 5 Okl. 647, 49 P. 1114; Ex Parte Canavan (1913) 17 N. Mex. 100, 130 P. 248; Ex Parte Kottwitz (1928) 117 Tex. 583, 8 S. W. (2d) 508. The commitment pursuant to

which the officer seeks to justify his detention of petitioner being entirely insufficient, it necessarily follows that the writ prayed for must be granted.

The writ prayed for will be granted.

ROBERTS, P. J., and CAMPBELL, WARREN, and RUDOLPH, JJ., concur.