SIOUX FALLS ·PAINT & GLASS CO., Respondent, v.
KNUDTSON, Appellant

(281 N. W. 201.)

(File No. 8166.   Opinion filed August 18, 1938.)

*Clair Roddewig,* Atty. Gen., and *Tom Eastman,* Asst. Atty. Gen., for Appellant.

*E. D. Barron,* of Sioux Falls, and *H. F. Ricketts,* of Mitchell, for Respondent.

ROBERTS, P. J. Plaintiff commenced this proceeding seeking to compel W. T. Knudtson, auditor of Minnehaha County, to countersign and deliver to the plaintiff a warrant on the county general fund for the payment of its claim which had been authorized by the board of county commissioners. Defendant, in his return to the alternative writ of mandamus, admitted all of the allegations set forth in the petition and alleged in substance that in May, 1937, Minnehaha County entered into a contract with the Works Progress Administration of the United States whereby it was agreed that a certain project would be established in Minnehaha County and that in consideration of the establishment of the project for the purpose of providing labor for needy and unemployed persons having a legal settlement in Minnehaha County, the County agreed to pay 8.3 per cent of the cost of the project; that pursuant to this agreement the project described as "a project providing labor for the collection, repair and renovation of old furniture for distribution to the needy families of Sioux Falls who are deemed eligible by the county welfare board" was established and maintained by the Works Progress Administration; that all persons who have been employed on the project are poor and indigent persons lawfully settled in Minnehaha County and would be public charges of the county if employment on the project were not available; that the merchandise furnished to the county by plaintiff constituted a portion of the contribution of the county to the maintenance of the project; and that defendant is not authorized by law to issue a warrant for the payment of such claim because there are no funds in the county general fund, not otherwise appropriated, from which the claim and demand may be paid.

The circuit court was of the opinion that the contract between the Works Progress Administration and Minnehaha County was valid; that statutory provisions for the support and relief of the

poor were sufficiently broad to authorize the contract and payment of the claim. From a judgment which commanded the defendant to countersign and deliver a warrant upon the county general fund, defendant appeals.

It is conceded that a claim against a county can only be founded upon a contract entered into with the proper officers acting within the scope of their authority or upon a statute. There is no statute expressly authorizing a county to contribute funds to a federal or other delegated agency for the benefit of poor and unemployed persons but it is contended that the authority of the county board to make the contract was necessary and incident to the performance of its powers and duties to relieve the poor. The legislature has imposed the duty to support the poor upon the counties. Sections 10035, 10037 and 10039, Rev. Code 1919, read as follows:

"§ 10035. Supervision. The county commissioners shall have supervision of the poor and shall perform all the duties with reference to the poor within their respective counties that may be prescribed by law."

"§ 10037. Counties Bound to Support. Every county shall relieve and support all poor and indigent persons lawfully settled therein, whenever they shall stand in need thereof, and the board of county commissioners may raise money for the support and employment of the poor as provided in section 6749; provided, that in any case where any county shall furnish relief to any person under the laws of this state providing for the support of the poor, such county shall have a claim against the person so relieved for the value of such relief, which may be enforced against any property, not exempt from execution, which such person may have or later acquire."

"§ 10039. Duty of Commissioners. The county commissioners in each county shall have the oversight and care of all poor persons in their county so long as they remain a county charge, and shall see that they are properly relieved and taken care of in the manner provided by law."

The obligation of counties with reference to the support of the poor results from the provisions of statute and has none of the elements of contract, express or implied. Hamlin County v.

v. Clark County, 1 S. D. 131, 45 N. W. 329; Roane v. Hutchinson County, 40 S. D. 297, 167 N. W. 168; South Dakota Employers Protective Ass'n v. Poage, 65 S. D. 198, 272 N. W. 806. The duty to relieve and support the poor is expressed in general terms, but the mode and nature of the relief extended is not left entirely to the judgment and discretion of the board of county commissioners. Poor persons may be committed to the county asylum as provided in section 10057, Rev. Code 1919, and in counties where no asylums for the poor have been established boards of county commissioners are authorized under section 10040, Rev. Code 1919, to contract for the maintenance of the poor. Provision is also made for temporary aid and medical services, and recognizing that complete dependency may be prevented provision is made for the payment of allowances, as to which there are restrictions imposed. §§ 10041, 10047, 10052 and 10055, Rev. Code 1919. Concerning the nature of the relief permissible under these statutes, this court in the recent case of South Dakota Employers Protective Ass'n v. Poage, supra, in considering an application for mandamus to require a county auditor to countersign warrants for premiums on a workmen's compensation policy covering relief workers employed on a federal work relief project, said: "The support and relief contemplated by the Legislature, as evidenced by the statutes, is direct in character and is primarily for the benefit of those unfortunate persons having a lawful settlement in the county who, through incapacity or circumstances over which they have no control, have lost the ability to help themselves. It includes, among other things, maintenance or allowance for necessities, hospitalization, medical care and treatment, education, visitation, and supervision. Much latitude is permitted, but the power is not unlimited. In ascribing intent to the Legislature, the fact that it placed limitations upon the power of the county to raise revenue cannot be overlooked. Nothing in the statute points to an intention that the county engage in activities directed to the promotion of other welfare programs, or that it solicit or bargain for outside assistance to the poor. Its power to spend is intimately related to its power to raise revenue."

■ It is asserted in argument that the decision in the Poage Case was predicated upon an entirely different state of facts; that in the contract involved in that case the county agreed to furnish workmen's compensation insurance not only for persons having

legal settlement within the county but for all persons employed on any federal relief project; and that in the instant case the persons benefited by the government program have a legal settlement within Minnehaha County. Counsel lay much stress upon the use of the word "employment" in section 10037, which imposes the duty upon the board of county commissioners of providing funds "for the support and employment of the poor," concluding that under this provision to which we made no specific reference in the case referred to a county is authorized to furnish relief by providing employment as well as furnishing direct relief to persons without means of support. Section 10057, Rev. Code 1919, provides that the board of county commissioners "shall take such measures for the employment and support" of permanent charges in the county asylum "as it may deem advisable." No other provision for the employment of the poor appears in the statutes. Provisions for the relief of the poor were originally enacted by chapter 17, Laws of 1868-69, and have continued on our statute books without substantial change. Section 10037 had its origin in section 4 of this territorial act, authorizing the board of county commissioners to "raise money for the support and employment of the poor in the same way and manner as in the twenty-ninth section of this act is provided." Section 29 referred to embraced substantially the provisions of section 10057. To give the word "employment" in section 10037 the meaning contended for by counsel would be inconsistent with the manifested intention of the legislature when the whole and every part of the statute providing for the relief of the poor is considered and when read in the light of the origin and history of that section; the authority to provide employment applies only to persons committed to a county poor asylum and there is no intimation that the board of county commissioners may relieve destitue persons by other employment. We reaffirm the views expressed in the Poage Case which are decisive of the principal issue in the instant case.

■■ The determination of the question whether a person is within the purview of the statute providing for relief is conferred upon county commissioners acting as overseers of the poor. See Roane v. Hutchinson County, supra. The record is susceptible of the conclusion that the board of commissioners may delegate such duty. But holding as we do that the statutes under review do

not authorize so-called work relief it is unnecessary to discuss the question of delegation of authority.

■ It is urged by counsel that the present widespread poverty resulting from unemployment has given rise to an emergency. But the rights of respondents are not to be determined by this fact. It is not the function of courts to modify or enlarge statutory provisions by construction to meet an emergency.

It follows that the judgment appealed from must be reversed.

All the Judges concur.