**The PEOPLE of the State of South Dakota, In the Interest of M. B., a Child, and Concerning E. B., Mother, and M. B., Father.**

### No. 13335.

Supreme Court of South Dakota.

Argued Sept. 28, 1981.

Decided Nov. 25, 1981.

Mark W. Barnett, Asst. Atty. Gen., Pierre, for appellant, State; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Joseph Neiles, Sioux Falls, for appellee-M. B.

FOSHEIM, Justice.

This appeal is from an order of contempt. We reverse.

M.B. was adjudicated a delinquent child and committed to the State Training School. A Pennington County deputy sheriff filed an affidavit to the effect that the State Training School refused to accept M.B. and that she was returned to the Pennington County juvenile detention center. Based on this affidavit, the trial court ordered Mr. Ed Green, the Superintendent of the State Training School, to appear and show cause why he should not be held in contempt for refusing to obey the order of commitment. Mr. Green appeared at the hearing and contended M.B. was denied admittance because space was not available.

At the conclusion of the contempt hearing, the court determined that it had jurisdiction and that there was an order in effect concerning which Mr. Green had knowledge, and the ability to comply. The court did not hold Mr. Green in contempt, however, because it was unable to find his actions willful and contumacious. The court then ordered the sheriff to transport M.B. to the State Training School and if admittance was again refused, the contempt hearing would resume.

To avoid needless inconvenience it was stipulated that if M.B. were again brought to the State Training School, admission would be refused. The contempt hearing was thereupon resumed and Mr. Green's refusal to admit M.B. was found to be willful and contumacious. The Court ordered Mr. Green to jail with the opportunity to purge himself by accepting M.B. at the State Training School. That order was stayed pending appeal.

The court found that space was available if the girls at the State Training School were either housed in a larger unit or if bunk beds and cots were utilized in the existing girls' unit. The trial court also found that acceptance of M.B., and two other girls on the waiting list ahead of her, would not add substantially to the cost of food and utilities or put undue stress on the staff, buildings or other facilities of the State Training School.

The court determined that an emergency situation existed because M.B. had been in virtual solitary confinement in the Pennington County jail; that M.B. attempted suicide in the county jail; and that M.B.'s behavior precluded her from staying at the Pennington County's juvenile detention center while awaiting available space and transfer to the State Training School.

The contempt order seems to rest basically on three statutes. The first is SDCL 26–8–39(1):

Whenever a child has been adjudicated as being delinquent, the court shall enter a decree of disposition, containing one or more of the following provisions which the court finds appropriate:

(1) The court may make any disposition, or combination of dispositions when appropriate, provided for under § 26–8–40.1 for disposition of a child in need of supervision, except that any delinquent child may be committed to the state training school at Plankinton.

The second is SDCL 26–8–1(7) which reads in pertinent part:

In this chapter unless the context otherwise plainly requires:

. . . .

(7) "Detention" means the *temporary* care of a child who requires secure custody in physically restricting facilities pending court disposition or an execution of a court order for placement or commitment[.] (Emphasis supplied.)

(*See also: People in Interest of C. E. B.*, 263 N.W.2d 874 (S.D.1978), which cited SDCL 26–8–1(7) as a basis for holding that detention "is a temporary decree and not a final disposition provided by statute." Id. at 875.) The third statute is SDCL 26–7–13, which provides:

[a]ny person who shall interfere with the direction or disposition of any child under any order of the court made in pursuance of the provisions of chapter 26–8, or with any probation or other officer of the court in carrying out the orders of the court, shall be held in contempt of court and subject to punishment as for contempt of court.

This appeal focuses on whether the trial court, notwithstanding the above statutes, had subject matter jurisdiction to conduct contempt proceedings against the superintendent of the State Training School.

Article XIV, § 1 of the South Dakota Constitution provides:

The charitable and penal institutions of the state of South Dakota shall consist of a penitentiary, insane hospital, a school for the feeble-minded, and a reform school.

Article XIV, § 2 places such institutions under the control of the state board of charities and corrections (Board), "under such rules and restrictions as the Legisla-

ture shall provide." The Legislature exercised that constitutional mandate by enacting SDCL 24–9–1 and 24–9–4.[1] These statutes are followed by SDCL 24–9–5 [2] which delegates to the Board the power to appoint and remove at its discretion a superintendent of the state training school. The superintendent in turn has the day-to-day authority and responsibility for the care, discipline and improvement of the inmates committed to that institution and to enact by-laws and rules for the regulation of the school and its inmates. SDCL 24–9–6.[3] Consequently, there is a chain of authority from the Constitution, via the Legislature and the Board, directly to the Superintendent.

The authority of the Board is further expressed in SDCL 26–8–40.6: "[n]o placement in any group home, group care facility, youth forestry camp, state training school or other facility may be made unless the agency or department operating such facility determines that space is available." Accordingly, the definition of available space is a perogative within the province of the Board with no legislative indication that it be subject to judicial review.

Pursuant to SDCL 26–8–40.6, the Board defined available space as sixty-five male residents and ten female residents based on the availability of physical facilities, staff and funding. That determination was in effect prior to the trial court's order of commitment and resulted in a waiting list to which the juvenile M.B. was added.

The trial court found that the Board's definition of space available did not take into account potential emergency commitment needs. This court has held, however, that it is not the function of the judiciary "to modify or enlarge statutory provisions by construction in order to meet an emergency," *Sioux Falls Paint & Glass Co. v. Knudtson*, 66 S.D. 261, 281 N.W. 201, 203 (1938), and that this Court will give effect to the obvious intention of the Legislature. *Western Surety Co. v. Addy*, 73 S.D. 322, 42 N.W.2d 660 (1950).

■ We therefore conclude that the trial court exceeded its jurisdiction in ordering the State Training School to accept the juvenile M.B. and the order finding Superintendent Green in contempt was accordingly null and void.

The disobedience of a void judgment is not punishable as contempt as such a judgment is a nullity. *Fienup v. Rentto*, 74 S.D. 329, 52 N.W.2d 486 (1952); *See State ex rel. Burke v. Marso*, 63 S.D. 38, 256 N.W. 257 (1934).

In conclusion we fully agree with the comments of the trial court that his order placed Mr. Green "between a rock and a hard spot." We likewise recognize that the conclusions we here reach can place a trial court, duty bound to make a disposition of a delinquent juvenile, in a similar quandary.

1. SDCL 24–9–1 reads:

    The reformatory institution maintained by the state at or in the vicinity of Plankinton, in Aurora county, known and designated by the name of 'state training school' shall continue to exist as an institution for the reformation of boys and girls, and shall be under the charge and control of the state board of charities and corrections.

    SDCL 24–9–4 reads:

    The board of charities and corrections shall supervise the erection of all buildings authorized to be built for the state training school. Such board shall have charge of the general interests of the institution and shall have power to see that its affairs are conducted in accordance with the requirements of law, and that strict discipline is maintained therein; and to provide employment and instruction for the inmates.

2. SDCL 24–9–5 reads:

    The board of charities and corrections shall have power to appoint a superintendent of the state training school who shall be subject to removal by the board at any time in its discretion and without assignment of cause.

3. SDCL 24–9–6 reads:

    The superintendent of the state training school shall have charge and custody of and shall discipline, govern, instruct, employ, and use his best endeavors to reform the inmates in such manner as while preserving their health, will secure the promotion, as far as possible, or moral, religious, and industrious habits and regular, thorough progress and improvement in their studies, trades, and employment. The superintendent shall have power to enact by-laws and rules for the regulation of the school, its officers, employees and inmates.

That, however, is a matter which our constitution directs the Legislature to address.

The order of contempt is accordingly reversed.

WOLLMAN, C. J., and DUNN and MORGAN, JJ., concur.

HENDERSON, J., concurs specially.

HENDERSON, Justice (concurring specially).

The genesis of this appeal is a civil finding of personal contempt against one Ed Green, Superintendent of the State Training School. The trial court viewed that the two hearings held below, over which it presided, were in the nature of summary contempt proceedings. When Ed Green appealed, via a notice of appeal by the state under SDCL 15–26A–38, the trial court reasoned and held that the appeal did not stay its order. Ed Green was uncomfortably close to that clang of finality which resounds upon the closing of the cell door. On January 6, 1981, the trial court ordered that Ed Green accept the juvenile girl into the State Training School or surrender himself by 5:00 p. m. Immediate salvation of Ed Green's plight, pending appeal, came when this Court on January 7, 1981, granted a stay of all orders issued by the trial court.

From the entire record, it appears that Ed Green had no ability to comply with the commitment order of the trial court and certainly did not act willfully and contumaciously in defiance of the order. There was no available space for the girl in question to be placed in the State Training School and testimony revealed that she would have had to sleep on a makeshift cot or mattress.

Requisite elements of contempt, as established by South Dakota law, are as follows: (1) existence of an order; (2) knowledge of an order; (3) ability to comply therewith; and (4) a wilful and contumacious refusal to comply. *Talbert v. Talbert*, 290 N.W.2d 862 (S.D.1980); *Hanisch v. Hanisch*, 273 N.W.2d 188 (S.D.1979).

Ed Green found himself in this tenuous position: (a) being judicially threatened with jail; (b) following the dictates of his employer, the Board of Charities and Corrections; and (c) obeying the State Legislature which funds the state institution he is required to administer. Ed Green was unwillingly postured as a sacrificial lamb for a confrontation between various arms of government. He should be saved. Although he was the defendant in the contempt proceeding, the real defendants (although unnamed) were the Board of Charities and Corrections and the State Legislature.

Throughout this ordeal, Ed Green was respectful to the judiciary. He held his head high in turbulent waters. He was caught up in a situation that had political and social overtones and I, for one, greatly admire his courage. He displayed no disdain, contempt or haughtiness. The trial court, on the record, stated: "Mr. Green, I sincerely hope that you do not take this personally. It was not meant to be personal. You have given 19 or 20 years of your life to this state and the children of this state." Ed Green was forced to either comply with the order of the court and accept the girl into the State Training School or necessarily surrender himself to the Pennington County Sheriff to be locked up in jail. I would construe this as rather "personal."

The coup de grace of this contempt proceeding is as follows: the trial court did not enter a finding of fact (as it could not, under the facts) that Ed Green's behavior was wilful and contumacious. Therefore, joining the majority opinion's ultimate holding, I would likewise reverse.