MULDER, Appellant v. TAGUE et al., Respondents

(186 N.W.2d 884)

(File No. 10763.   Opinion filed May 17, 1971)

Rehearing denied July 12, 1971

**Robert L. O'Connor,** Sioux Falls, for plaintiff and appellant.

**Marvin K. Bailin, of Christopherson & Bailin,** Sioux Falls, for George and Chiyoka Tague, defendants and respondents.

**Ellsworth E. Evans, of Davenport, Evans, Hurwitz & Smith,** Sioux Falls, for Robert and Maridale Hanson, defendants and respondents.

**Robert Jones,** Sioux Falls, for Dale and Gladys DeZotell, defendants and respondents.

HANSON, Judge.

Peter Mulder commenced this action against defendants (1) for injunctive relief, and (2) for damages caused by surface water backing up behind alleged obstructions created or maintained by defendants. Following trial to the court an injunction was granted for the removal of obstructions in the natural drainage area on defendants' properties, but the claim for damages was denied. Plaintiff appeals alleging numerous errors relating to (1) insufficiency of the findings and conclusions, (2) insufficiency of the evidence to support the findings, and (3) misapplication of the law to the facts.

Reviewing the evidence in a light most favorable to the findings of the trial court it appears all the property involved is located withi na two-block residential area in the city of Sioux Falls bounded on the north by 33rd Street, on the south by 35th Street, on the east by Duluth Avenue, and on the west by Norton Avenue. This area is now one continuous block as 34th Street has been vacated.

In 1963 plaintiff purchased a home located in the northwest quarter of the block. This house was constructed in 1948 and was one of the first improvements made in the block. The yard is somewhat below the grade level of 33rd Street.

Defendants Tague own 723 West 33rd Street adjoining plaintiff's property on the west. They also own several other

properties south in the block bordering Norton Avenue. Defendants Hanson and DeZotell both own residential properties further south in the west half of the block bordering or fronting on Norton Avenue.

Plaintiff does not claim damages against the DeZotells and the issues between these parties have been settled by stipulation whereby it is agreed the stone wall at the rear of the DeZotell property does not unreasonably interfere with the natural drainage of surface water. These defendants have further agreed to keep a five-foot natural drainage area in the rear of their lot free from obstructions.

The two-block area in which all of the property involved is located naturally slopes from north to south. Originally there was a six-foot drop in elevation from 33rd Street to 35th Street, however, after 35th Street was brought to grade in 1962 there in only a two-foot difference in elevation. After 35th Street was brought to grade all of the construction south of plaintiff's property required fill to bring it to grade and make it usable.

Surface water from a 75-block area north, east, and west of plaintiff's property flows into 33rd Street. It then drains off of 33rd Street at the northeast corner of plaintiff's property and flows south across the entire block. This natural drainage area is located to the rear of defendants' lots. In 1963 defendants Tague and Hanson filled a portion of their rear lots to a height of 14 inches. Tague installed a snow fence, or corn cribbing, over the fill and used the area for a garden. A complaint was made to the city engineer who wrote a letter to defendants advising them the fill would block the drainage area and could cause water to back up and flood homes in the north end of the block. He expressed his further opinion that the drainage area should be opened to alleviate this potential flooding danger. Nothing was done by defendants in response to the city engineer's letter and the fill and fence in their rear yards are the obstructions complained of by plaintiff.

During the night of September 11, 1966, 4.02 inches of rain fell between midnight and 5:00 a. m. Although rain-

falls in excess of four inches in a 24-hour period have only occurred twice before in the Sioux Falls area—in 1896 and 1957—the court characterized the 1966 storm as excessive and unusual but not so unprecedented as to constitute a so-called Act of God.

As a result of the unusual rainfall the entire area between 33rd Street and 35th Street was under water. It was described as a lake. As a consequence, plaintiff's basement filled with water causing the damages complained of. The force and depth of the water also caused the Tague and Hanson basements to cave in although the elevation of these yards was from 1 to 1.8 feet higher than plaintiff's yard. After the storm defendants removed from 14 to 18 inches of fill from the rear of their lots.

The storm sewers were not adequate to handle the volume of water during the storm. Instead of acting as a drain one storm sewer was acting as a geyser which poured water into the area near vacated 34th Street.

■ The findings of fact made by the trial court are binding upon this court unless found to be "clearly erroneous". SDCL 15-6-52(a). We are unable to so find after a careful review of the voluminous record. To the contrary every finding is supported by competent evidence. There are, of course, conflicts in the evidence, but these have all been resolved by the trier of the facts in favor of defendants. We are not at liberty to change them on review.

■ Much of the conflicting testimony and evidence involves expert testimony. In this respect Dr. Ronald Nelson, a professor of physics at Augustana College, was permitted to testify as an expert as to the flowage, volume, extent, and depth of the water in the area involved following the September 11, 1966 storm. Professor Nelson is the holder of a bachelor, master and doctor's degree in physics and has experience with surveys and the preparation and use of contour maps. It was not necessary for Dr. Nelson to be a licensed surveyor or civil engineer in order to be qualified to testify as an expert. The qualification of a witness to testify as an expert is a matter resting in the sound dis-

cretion of the trial judge and we find no abuse of that discretion in this case. Wentzel v. Huebner, 78 S.D. 481, 104 N.W. 2d 695.

■ Standing alone the findings of fact and conclusions of law entered by the court might be considered inadequate and insufficient. However, the trial court's nine-page single-spaced memorandum decision is incorporated in and made a part of the findings and conclusions. This is factually detailed and clearly sets forth the court's application of the law to the facts. Under the circumstances, plaintiff could not be prejudicially harmed and the irregular form of the findings and conclusions constitutes harmless error.

■ Plaintiff claims the 14-inch dirt fill made by defendants Tague and Hanson at the rear of their lots and the snow fence erected by Tague behind his garage constituted obstructions to the natural drainage channel causing water to back up and flood his property. However, the mere fact this condition existed and plaintiff's property was flooded following the unusual rainfall on September 11, 1966, does not establish defendants' liability for the damages. Although such obstructions might be considered contributing factors, they were not found to be the proximate cause of plaintiff's damages.

■ The term "proximate cause" contemplates an immediate cause which, in natural or probable sequence, produces the injury complained of. Schmeling v. Jorgensen, 77 S.D. 8, 84 N.W.2d 558; Rumbolz v. Wipf, 82 S.D. 327, 145 N. W.2d 520. This excludes the idea of legal liability based on mere speculative possibilities or circumstances and conditions remotely connected to the events leading up to an injury.

■ To be actionable, the cause of harm must be a substantial factor in bringing about the harm, Restatement of Torts 2nd § 431. In the comment to this section it is pointed out that the word "substantial" is used to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using

that word in the popular sense, in which there always lurks the idea of responsibility, rather than in the so-called "philosophic sense", which includes every one of the great number of events without which any happening would not have occurred. Each of these events is a cause in the so-called "philosophic sense", yet the effect of many of them is so insignificant that no ordinary mind would think of them as causes. In considering whether negligent conduct is a substantial factor in producing harm to another the following considerations are important:

> "(a) the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it;
>
> (b) whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm, or has created a situation harmless unless acted upon by other forces for which the actor is not responsible;
>
> (c) lapse of time." Restatement of Torts 2nd § 433..

Under all the facts and circumstances the obstructions in the drainage channel created by defendants Tague and Hanson cannot reasonably be considered a legal, or actionable, cause of plaintiff's damages. During the storm on September 11, 1966, the water level on both sides of the alleged obstruction was the same. It follows that plaintiff's basement would have been flooded and damaged in the absence of such obstructions. They were, at most, remote and insignificant causative factors. Numerous other factors, conditions, and circumstances directly contributed to cause plaintiff's harm such as:

1. The unusually heavy rainfall in a short space of time.

2. The collection of surface waters from a drainage area of 75 blocks converging upon and across plaintiff's property.

3. Plaintiff's house was one of the first constructed in the block and with a lot level below the grade of 33rd Street.

4. The storm sewers were inadequate to care for the quantity of water flowing into the area.

5. The raising of 35th Street four feet high across the natural drainage channel constituted a barrier which acted like a dam.

6. The construction of houses, garages, and improvements encroached upon and narrowed the natural drainage channel throughout the two-block area.

7. The discharge of surface water from an overloaded storm sewer.

8. Raising streets and avenues to grade followed by grading and filling of lots and yards.

9 The accelerated runoff of water in the whole drainage area resulting from the construction of new homes, garages, business places, streets, sidewalks, parking lots, and driveways.

■ The rights and duties of adjacent landowners in this state with respect to surface water flowage has been governed by the so-called civil law rule. Basically this rule forbids any interference with the natural flow of surface water by either the upper or lower landowner. The lower land is, therefore, burdened with an easement or servitude to accept the surface water which naturally drains onto it and the natural flow of such water cannot be obstructed or turned back to the detriment of the upper adjacent land. Thompson v. Andrews, 39 S.D. 477, 165 N.W. 9; Johnson v. Metropolitan Life Ins. Co., 71 S.D. 155, 22 N.W.2d 737; La Fleur v. Kolda, 71 S.D. 162, 22 N.W.2d 741; Kougl v. Curry, 73 S.D. 427, 44 N.W.2d 114. As any change in grade, level, or topography might affect natural drainage, the civil law rule cannot reasonably be strictly applied in urban areas. To do so would prevent the proper use, development, improvement, and enjoyment of considerable urban property. Also the

reason for the rule disappears in areas where adequate artificial drains and storm sewers are provided.

Although the court did not consider it necessary to adopt a modified urban rule in Young v. Huffman, 77 S.D. 254, 90 N.W.2d 401, it did point out that "In some jurisdictions which ordinarily follow the civil law rule, it is recognized that in the case of urban property changes and alterations in the surface are essential to the enjoyment of the property and that the owner may make changes in the surface of a city or town lot essential to its enjoyment regardless of the effect on the flow of surface waters provided he has not been negligent. 93 C. J.S. Waters § 114b; see also annotation in 12 A.L.R.2d 1338." Assuming such language signaled a necessary change in our law relating to surface water drainage the trial court did not strictly apply the civil law rule to the facts in this case. We approve.

■ Following the modern trend of authorities we expressly adopt the "reasonable use" rule relative to the drainage of surface waters in urban areas of this state. Under this rule each owner "is legally privileged to make a reasonable use of his land, even though the flow of surface waters is altered thereby and causes some harm to others, but incurs liability when his harmful interference with the flow of surface waters is unreasonable." 1A Thompson on Real Property § 266, p. 384. See also 5 Powell on Real Property § 731, p. 438.5; Anno: Surface Waters-Drainage-Etc., 59 A.L.R.2d 421.

■ The judgment denying plaintiff's cause of action for damages but granting injunctive relief on the same facts is not inequitable, irreconcilable, inconsistent, illogical, or incompatible. Damages were denied because the alleged obstructions were not a substantial factor causing plaintiff's harm. On the other hand, in relation to plaintiff's rights as an upper landowner the reasonable use of defendant's properties requires them to refrain from interfering with the natural flow of surface water along and over the rear five feet of their lots and to keep such area free from obstructions.

This conforms to the reasonable use of the DeZotell property which plaintiff stipulated and agreed to.

■ In the event plaintiff had prevailed in his civil action for damages costs would have been allowed as a matter of course. SDCL 15-17-11. But as plaintiff received equitable relief only the trial court did not abuse its discretion in decreeing that no costs be taxed. SDCL 15-17-16. Martindale v. Dickey 72 S.D. 595, 38 N.W.2d 140.

Affirmed.

All the Judges concur.