**Anthony L. TALBERT, Plaintiff and Appellant,**

**v.**

**Edna Marie TALBERT, Defendant and Appellee.**

**Nos. 12621, 12622.**

Supreme Court of South Dakota.

Submitted on Briefs Feb. 21, 1980.

Decided April 9, 1980.

John J. Delaney, of Amundson & Fuller, Lead, for plaintiff and appellant.

Richard D. Hagerty, Yankton, for defendant and appellee.

DUNN, Justice.

Plaintiff was found in contempt of court for defaulting in his obligations to pay child support and alimony. We reverse and remand.

Plaintiff and defendant were divorced on July 14, 1977. Under the terms of the support agreement entered into by the parties, plaintiff agreed to pay defendant $208.33 per month for each of three children and $833.33 per month in alimony. At the time of the divorce and for three months thereafter, plaintiff practiced pediatrics and neonatology with the Medical Clinic in Yankton, South Dakota. He earned $40,000 per year from this employment. The association with the Medical Clinic was terminated in November of 1977, apparently through no fault of plaintiff. Subsequent to this termination, plaintiff refused an offer of employment with Sacred Heart Hospital in Yankton at a salary of $40,000 per year because "the workload was too great." Plaintiff, his new bride and their child moved to Rapid City, South Dakota, where he opened a medical practice in late March of 1978. At the time this matter was briefed, plaintiff asserted that the new practice was not yet paying operating expenses. He purchased a new home with a monthly payment of $555, maintained a 1977 Corvette automobile with payments of $307 per month, and purchased a $100,000 insurance policy, naming his new wife as the beneficiary.

Plaintiff's financial obligations to his former wife and their children were fulfilled from the date of the divorce decree until July and August of 1978, when he defaulted. Defendant initiated an order to show cause, which was heard on August 25, 1978. The court issued its memorandum decision on August 28, 1978, and on August 30, 1978, entered its order finding plaintiff in contempt of court for his willful failure and refusal to meet his financial obligations. In its order, the court granted plaintiff thirty days to purge himself of contempt. He failed to do so, and defendant initiated another order to show cause on October 12, 1978, which was heard on October 25, 1978. On the same date, the court entered its order and judgment finding plaintiff in contempt. Following denial of a motion for new trial, appeals were taken from both the order of August 30, 1978, and the order and judgment of October 25, 1978. The appeals were consolidated by order of this court.

The plaintiff contends that the record did not contain sufficient evidence to find that he had the ability to comply with agreement requiring alimony and support payments and willfully refused to do so. He cites *Agrue v. Agrue*, 233 Or. 456, 378 P.2d 965 (1963), and *Balaam v. Balaam*, 52 Wis.2d 20, 187 N.W.2d 867 (1971), as support for his contention that a divorced husband is entitled to pursue a fair choice of livelihood, even though his choice may result in a reduction of income. Both decisions, however, speak of good faith. We see no good faith on the part of plaintiff when he insists upon maintaining high monthly payments for a new house and a sports car while his medical practice is unable to meet expenses and his former wife receives welfare in Massachusetts. The defense of absolute inability must be proved by the party who asserts it. *Bailey v. Bailey*, 77 S.D. 546, 95 N.W.2d 533 (1959); *Simmons v. Simmons*, 67 S.D. 145, 290 N.W. 319 (1940). These cases both imply that the primary responsibility of one in plaintiff's position is to his former wife and their children. It is true that plaintiff borrowed money to pay his obligations in the past and that he is now unable to obtain further

loans; however, it is clear that he would not be in such a dilemma had he refrained from indulging in expensive luxuries.

■ Nor do we find any substance to plaintiff's contention that the order and the order and judgment finding him in contempt are fatally defective because they were not personally served upon him. *Krueger v. Krueger*, 32 S.D. 470, 143 N.W. 368 (1913). This is a clear misreading of *Krueger* and its predecessors, *Scott v. Scott*, 9 S.D. 125, 68 N.W. 194 (1896), and *Larson v. Larson*, 9 S.D. 1, 67 N.W. 842 (1896). These cases hold that a person may not be adjudged guilty of contempt without a showing "that a copy of such decree was personally served upon him before the commission of, or omission to do, those acts the commission or omission of which constitute the alleged contempt." *Krueger*, 32 S.D. 472, 143 N.W. 369. This statement clearly refers to the original divorce decree mandating alimony and child support payments. Plaintiff does not contend that the original divorce decree was not served upon him personally, and the fact that he abided by the decree for many months satisfies us that he fully understood his obligations.

Furthermore, it is clear that the plaintiff had notice of the order of August 30, 1978, by and through his counsel. His counsel plainly admitted that "we received notice of it on 5 September, I believe." It is also clear that the order and judgment of October 25, 1978, was entered in the presence of plaintiff's counsel. Plaintiff's contention that the orders finding him guilty of contempt had to have been served upon him personally is therefore unfounded.

■ Finally, plaintiff argues that the trial court failed to enter findings of fact and conclusions of law regarding his financial ability to meet his obligations and his willful refusal to do so. With this we must agree. There were no separate findings of fact at the initial contempt proceeding. The memorandum decision of August 28, 1978, does not suffice for separate findings of fact. In *Mulder v. Tague*, 85 S.D. 544, 186 N.W.2d 884 (1971), we found that the memorandum decision was adequate without separate findings of fact. The *Mulder* case differs from the instant case, however, in that the memorandum decision contained an extensive recitation of the facts and the applicable law as found by the court, and it was specifically incorporated into the findings and conclusions.

■ In this case, the findings of fact incorporated into the order and judgment of October 25, 1978, were insufficient to form a clear basis for the contempt order. Without a thorough recitation of facts that support a finding of contempt and without a finding that the four elements of contempt are present, a conclusion that contempt of court has occurred is improper. The four elements to which we allude are (1) existence of an order, (2) knowledge of that order, (3) ability to comply with the order, and (4) willful or contumacious disobedience. *Hanisch v. Hanisch*, 273 N.W.2d 188 (S.D.1979). It is clear that the findings of fact of October 25, 1978, were insufficient, and therefore the order and judgment *nunc pro tunc* of the same date did not cure the failure to enter findings at the original contempt proceeding.

The order and the order and judgment from which the appeals are taken are reversed, and the matter is remanded to the trial court for findings of fact and conclusions of law to support the contempt judgment.

MORGAN and HENDERSON, JJ., concur.

WOLLMAN, C. J., and FOSHEIM, J., concur specially.

FOSHEIM, Justice (concurring specially).

The majority opinion correctly states the rule announced in *Krueger v. Krueger*, 32 S.D. 470, 143 N.W. 368 (1913); *Scott v. Scott*, 9 S.D. 125, 68 N.W. 194 (1896); and *Larson v. Larson*, 9 S.D. 1, 67 N.W. 842 (1896), that in order to support a finding that the acts were wilful and contemptuous it must be shown that a copy of the divorce decree was personally served upon the contemnor. Proof, however, that the alleged

contemnor had actual notice of his obligations as imposed by the decree renders personal service unnecessary. *Freeman v. City of Huron*, 8 S.D. 435, 66 N.W. 928 (1896); *State v. Knight*, 3 S.D. 509, 54 N.W. 412 (1893).

In my opinion, this requirement applies to all subsequent orders in the contempt process including grants of purgation. While the record does not show proof of personal service of the divorce decree, the plaintiff, as the majority opinion notes, does not urge any such failure. I disagree, however, with that part of the opinion which concludes that since appellant's counsel was present when the August 30, 1978 order was entered and thereafter acknowledged having received notice of that order, the notice requirements were thereby met. In my opinion, that conclusion is erroneous. The evidence necessary to prove contempt must be clear and satisfactory, 27B C.J.S. Divorce § 262(j) (1959), and must be strictly construed in favor of the accused. The usual presumption in favor of the regularity of the proceedings does not apply in contempt matters. *Ex parte Shackleford*, 116 Cal. App.2d 864, 254 P.2d 610 (1953); *Groves v. Superior Court*, 62 Cal.App.2d 559, 145 P.2d 355 (1944). The knowledge of counsel cannot be imputed to his client to show actual notice and contumacious conduct with respect to the original decree, *Svihla v. Svihla*, 126 N.W.2d 135 (N.D.1964), or an order to show cause, *Kroneberger v. Superior Court*, 196 Cal.App.2d 206, 16 Cal.Rptr. 339 (1961). I believe that this rule logically extends to all subsequent orders springing from the original.

I agree with the majority opinion that the failure of the trial court to enter proper findings of fact and conclusions of law regarding the plaintiff's financial ability to meet his obligation and his wilful refusal to do so is reversible error.* *Fienup v. Rentto*, 74 S.D. 329, 52 N.W.2d 486 (1952); *Hoffman v. Hoffman*, 26 S.D. 34, 127 N.W. 478 (1910).

The remand to enter proper findings of fact and conclusions of law will, in my opinion, require retracing the proceedings to the Memorandum Decision entered on August 28, 1978. The findings of fact and conclusions of law will likely then replace and render moot objections concerning the order of August 30, 1978.

I am authorized to state that Chief Justice WOLLMAN joins in this special concurrence.

---

* I thus question the propriety of directly addressing the sufficiency of the evidence relating to the elements of the contempt issue.