Patricia McELHANEY, Plaintiff,

v.

ELI LILLY & CO., An Indiana Corporation; Abbott Laboratories, An Illinois Corporation; Merck & Co., Inc., A New Jersey Corporation; Miles Labs, An Indiana Corporation; Ortho Pharmaceutical Corp., A New Jersey Corporation; Parke Davis & Co., A Michigan Corporation; Rexall Drug Co., A Delaware Corporation; E.R. Squibb & Sons, Inc., A Delaware Corporation; Upjohn Company, Inc., A Delaware Corporation; Schering Corporation; and McNeil Laboratories, Inc., being sued separately and as representatives of the class of similarly situated drug manufacturers, Defendants.

Civ. No. 80–3069.

United States District Court,
D. South Dakota, C.D.

May 16, 1983.

See also D.C., 93 F.R.D. 875.

Charles Rick Johnson, Johnson, Eklund & Davis, Gregory, S.D., for plaintiff.

Harold C. Doyle, May, Johnson, Doyle & Becker, Sioux Falls, S.D., for defendant Rexall Drug Co.

William Taylor, Woods, Fuller, Shultz & Smith, Sioux Falls, S.D., for defendant Eli Lilly Co.

W.A. Hackett, Austin, Hinderaker & Hackett, Watertown, S.D., and Haight, Dickson, Brown & Bonesteel, Santa Monica, Cal., for defendant E.R. Squibb & Sons, Inc.

William F. Day, Jr., Day, Grossenburg & Whiting, Winner, S.D., for defendant Schering Corp.

Chester A. Groseclose, Jr., Aberdeen, S.D., for defendant Upjohn Co.

Carleton R. Hoy, Davenport, Evans, Hurwitz & Smith, Sioux Falls, S.D., and Hugh L. Moore, Chicago, Ill., for defendant Abbott Laboratories.

David A. Gerdes, May, Adam, Gerdes & Thompson, Pierre, S.D., for defendant McNeil Laboratories.

Gene N. Lebrun, Lynn, Jackson, Shultz & Lebrun, Rapid City, S.D., for defendant Merck & Co., Inc. and Merck, Sharpe & Dohme.

Robert C. Riter, Jr., Riter, Mayer, Hofer & Riter, Pierre, S.D., for defendant Parke Davis & Co.

## MEMORANDUM OPINION

DONALD J. PORTER, District Judge.

Plaintiff initiated this diversity action (28 U.S.C. Sec. 1332) seeking damages because of her vaginal and cervical adenosis, allegedly caused by her exposure to diethystilbesterol (DES). She admittedly cannot identify the manufacturer of the DES she alleges caused her condition. Defendants have now filed a joint motion contending that each are entitled to summary judgment in light of plaintiff's inability to prove that any of them manufactured or sold the DES involved here.

The issue presented is whether, under the particular circumstances of this case, plaintiff's prima facie case must include the identity of the manufacturer who made or marketed the DES which allegedly injured plaintiff.

Summary judgment is a procedural tool allowing for disposition of a case on the merits where there exists no dispute over a material fact, and the moving party is entitled to judgment as a matter of law. The Court may consider the pleadings, affidavits on file, depositions and other competent evidence. Furthermore, the Court is to consider all the evidence in a light most favorable to the non-moving party. *Snell v. United States,* 680 F.2d 545 (8th Cir.1982).

6 J. Moore, Moore's Federal Practice, ¶ 56.-04 (2d Ed.1976).

The files and records now before the Court include the depositions of Patricia McElhaney, the plaintiff, Zita M. Smith, the plaintiff's mother, Charles Van De Walle, the pharmacist who filled the DES prescriptions taken by plaintiff's mother, Dr. Don Carlos Hines, the Eli Lilly medical monitor for DES, and Dr. Theodore G. Klumpp, a former Food and Drug Administration reviewer of new drug applications during the period in which DES was approved for use by pregnant women. Also before the court are the pleadings, plaintiff's responses to defendants' interrogatories, the briefs of the parties, and affidavits from several defendants' regarding their manufacturing and marketing of DES.

## I. FACTUAL SUMMARY AND BACKGROUND OF DES

Patricia Smith McElhaney was exposed to DES "in utero" in 1949. Between May 28, 1949 and December 23, 1949 Zita Linneman Smith, the plaintiff's mother, was treated with various doses of DES (5 mg. 10 mg. and 25 mg.) and gave birth to Patricia Smith McElhaney on December 31, 1949 in Sioux Falls, South Dakota.

The history of DES is well documented [1] and it will be sufficient for this motion simply to sketch the historical background. DES is a synthetic female sex hormone (estrogen) first synthesized in England in 1938. The Food and Drug Administration (FDA) gave approval in 1941 to twelve companies to manufacture and market DES for a variety of clinical uses.[2] In 1947, eight drug manufacturers received FDA approval to manufacture and market DES for use by pregnant women to prevent miscarriage.[3] Ultimately, DES was banned by the FDA in 1971 after it became apparent that a causal connection probably existed between exposure to DES "in utero" and certain rare forms of cancer.[4]

To date, there have been over 1,000 suits against DES manufacturers.[5] A major stumbling block for the DES plaintiff has been the inability to identify the manufacturer of the DES ingested by the mother, thus not proving the essential element of established product liability causes of action,[6] the product source. Part of the identity problem is that during the period between 1947 and 1971 DES was manufactured and distributed mostly as a generic drug. Pharmacists many times did not know who manufactured the DES they purchased because the chain of distribution went from manufacturer to wholesaler to

1. Comment, *DES And A Proposed Theory Of Enterprise Liability,* 46 Fordham L.Rev. 963 (1978) [hereinafter, *Comment* ]; *Ryan v. Eli Lilly & Co.,* 514 F.Supp. 1004 (D.S.C.1981); *Bilcher v. Eli Lilly & Co.,* 55 N.Y.2d 571, 450 N.Y. S.2d 776, 436 N.E.2d 182 (1982).

2. These uses include menopausal symptoms, senile vaginitis, and relief of. engorgement of the breasts of post-partum women. Affidavit of Don Carlos Hines, M.D., p. 21.

3. The medical research which advocated the use of DES by pregnant women to prevent miscarriages served as the foundation for all eight applications. Krarnaky, *The Use Of Stilbesterol For Treatment Of Threatened And Habitual Abortion In Premature Labor: A Preliminary Report,* 35 S.Med.J. 838 (1942), and Smith, *Diethystilbesterol In The Prevention And Treatment Of Complications Of Pregnancy,* 58 Am.J. Obstet. and Gynec. 821 (1948). Both of these studies received substantial criticism soon after. Dieckmann, Davis, Rynkyewicz and Tot-

tinger, *Does The Administration Of Diethystilbesterol During Pregnancy Have Therapeutic Value?,* 66 Am.J.Obstet. and Gynec. 1062 (1953); Robinson and Shettles, *The Use Of Diethystilbesterol In Threatened Abortion,* 63 Am.J. Obstet. and Gynec. 1330 (1952). *Bilcher v. Eli Lilly & Co.,* 55 N.Y. 571, 450 N.Y.S.2d 776, 436 N.E.2d 182 (1982); *Comment, supra* n. 1 at 963 n. 2.

4. Statistical data revealed the link between DES ingested by pregnant women and the incidence of cancer in their offspring. Greenwald, Barlow Nascan and Burnett, *Vaginal Cancer After Maternal Treatment With Synthetic Estrogen,* 285 N.Eng.J.Med. 390 (1971); Herbst, Uofelder and Poskanzer, *Adenocarcinoma Of The Vagina,* 285 N.Eng.J.Med. 878 (1971). "*Comment,* supra n. 1 at 964 n. 5"

5. *Bilcher v. Eli Lilly & Co.,* 55 N.Y. 571, 450 N.Y.S.2d 776, 436 N.E.2d 182 (1982).

6. *Comment supra,* n. 1 at 972.

pharmacist, and in its generic form, records of the particular manufacturer were not kept or have been destroyed.[7] The plaintiff's mother and pharmacist in this case have no recollection of the color, size or manufacturer of the DES plaintiff's mother ingested[8] while pregnant with plaintiff.

## II. DISCUSSION

The plaintiff has based her cause of action on breach of warranty, negligence, strict liability and theories of enterprise liability, concert of action, market share liability and alternative liability. It is clear that in a diversity action a United States District Court must follow the substantive law of the forum. In the absence of a controlling rule as set forth either by statute or by the state's highest court, the United States District Court must apply the rule it believes the State Supreme Court would adopt. *Commissioner v. Estate of Bosch,* 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967); *Luster v. Retail Credit Co.,* 575 F.2d 609, 613 (8th Cir.1978); *Yarrow v. Sterling Drug, Inc.,* 263 F.Supp. 159, 161 (D.S.D.1967).

The core of defendants' motion concerns the plaintiff's burden of proof under breach of warranty, strict liability and negligence. The defendants have cited several South Dakota cases for the proposition that a necessary element of any products liability cause of action must be the identification of the product source by the plaintiff. *Mulder v. Tague,* 85 S.D. 544, 186 N.W.2d 884 (1971); *Kramer v. Sioux Transit, Inc.,* 85 S.D. 232, 180 N.W.2d 468 (1970); *Joslin v. Linder,* 26 S.D. 420, 128 N.W. 500 (1910). Defendants refer to this element as causation, an issue upon which the plaintiff bears the burden of proof. *Northwestern Bell v.*

*Henry Carlson Co.,* 83 S.D. 664, 165 N.W.2d 346, 348 (1969). But causation and identification of the product source are not the same issues. Causation goes to the question of what instrumentality or mechanism caused the plaintiff's injury, *Schaffer v. Honeywell,* 249 N.W.2d 251, 256 (S.D.1976), whereas the issue here is the identity of the source of that instrumentality.

The cases cited by defendants involved one known tortfeasor and one injury. The cases cited by defendant do not deal with the issue of who bears the burden of proof on the product source issue in the case where several defendants acted tortiously and only one defendant caused the plaintiff's injury. *See e.g. Summers v. Tice,* 33 Cal.2d 80, 199 P.2d 1 (1948). In *Summers,* two members of a hunting party fired their shotguns in the direction of the plaintiff when they knew the plaintiff was probably in the line of fire. The plaintiff was injured, but by only one of his fellow hunters. The California Supreme Court held that both hunters were jointly and severally liable for the plaintiff's injuries unless one could show it was not his shotgun that caused the injury. The Court reasoned that to hold otherwise would give relief to the negligent parties and, in effect, punish the victim by blocking any avenue of relief. *Summers, supra,* 199 P.2d at 3.

Products liability law in South Dakota remained relatively constant until 1973. In that year, the South Dakota Supreme Court adopted strict liability in tort, which substantially shifted the risk of injury from the individual to the manufacturer. In *Engberg v. Ford Motor Company,* 87 S.D. 196, 205 N.W.2d 104 (1973), the South Dakota Supreme Court adopted Section 402A of the Restatement Second of Torts,[9]

---

7. Deposition of Charles Van De Walle (pharmacist) pp. 9–12. Note, *Market Share Liability; An Answer to the DES Causation Problem,* 94 Harv.L.Rev. 668, 670 (1981).

8. Deposition of Zita M. Smith, pp. 45–45; Deposition of Charles Van De Walle pp. 9–10.

9. *Section 402A.* SPECIAL LIABILITY OF SELLER OF PRODUCT FOR PHYSICAL HARM TO USER OR CONSUMER.

(1) One who sells any product in a defective condition unreasonably dangerous to the user or to consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer or to his property, if
(a) the seller is engaged in the business of selling such a product, and

and in *Smith v. Smith,* 278 N.W.2d 155 (S.D.1979), recognized strict liability in tort as a separate cause of action.[10] The *Engberg* Court held that Section 402A was designed for two purposes: (1) to protect the public; and (2) to ensure that the damages resulting from defective products are borne by those who market the product. *Engberg v. Ford Motor Co., supra,* 205 N.W.2d at 109. No longer was it necessary for the plaintiff to show privity with the defendant or fault on the part of the defendant. The tortfeasor's level of care became irrelevant under strict liability. In order to state a cause of action based on strict liability, an injured party need only prove that he was injured by a product which was unreasonably dangerous when it left the control of the seller-manufacturer and the injured party was a foreseeable consumer. *Fajardo v. Cammack,* 322 N.W.2d 873, 876 (S.D. 1982).

The roots of Section 402A of the Restatement 2d of Torts are found in the official comments:

> On whatever theory, the justification for the strict liability has been said to be that the seller, by marketing his products for use and consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it; that the public has a right to and does expect in the case of products which it needs and for which it is forced to rely upon the seller, that reputable sellers will stand behind their goods; that public policy demands that

the burden of accidental injuries caused by products intended for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained; *and that the consumer of such products is entitled to the maximum of protection at the hands of someone, and the proper persons to afford it are those who market the products.* Restatement (Second) of Torts, Section 402A, comment c (1977) (emphasis added).

In the past, the first and second Restatement of Torts is a source the South Dakota Supreme Court has consistently relied on in formulating rules of tort law.[11] Section 433B(3) of the Restatement 2d of Torts sets out the burden of proof rule the South Dakota Supreme Court would likely adopt if faced with the facts in this case, and is the rule which this Court, therefore, is bound to apply:

> When the conduct of two or more actors is tortious, and it is proved that harm has been caused to the plaintiff by only one of them, but there is uncertainty as to which one has caused it, the burden is upon each such actor to prove that he has not caused the harm.

█ The defendants in the case at bar are or were manufacturers of the drug DES. The above rule does not relieve the plaintiff of proving DES caused her injury or lessen the burden as to any other element necessary under negligence, or strict liability theories. It does, however, remove

> (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
> (2) The rule stated in subsection (1) applies although
> (a) the seller has exercised all possible care in the preparation and sale of his product and
> (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

**10.** The Court in *Engberg* had recognized Section 402a as simply having a procedural and not a substantive effect. Smith overruled *Engberg* only to the extent that *Engberg* stood for the proposition that Section 402a changed South Dakota's procedural and not substantive tort law.

**11.** *Jahnig v. Coisman,* 283 N.W.2d 557 (S.D. 1979); *Smith v. Smith,* 278 N.W.2d 155 (S.D. 1979); *Engberg v. Ford Motor Co.,* 87 S.D. 196, 205 N.W.2d 104 (S.D.1973); *Albers v. Ottenbacher,* 79 S.D. 637, 116 N.W.2d 529 (1962); *Rikansrud v. City of Canton,* 79 S.D. 592, 116 N.W.2d 234 (1962); *Wittmeier v. Post,* 78 S.D. 520, 105 N.W.2d 65 (1960); *Bucholz v. City of Sioux Falls,* 77 S.D. 322, 91 N.W.2d 606 (1958); *Steckman v. Silver Moon, Inc.,* 77 S.D. 206, 90 N.W.2d 170 (1958); *Chernotik v. Schrank,* 76 S.D. 374, 79 N.W.2d 4 (1956); *McCleod v. Tri-State Milling Co.,* 71 S.D. 362, 24 N.W.2d 485 (1946); *Kimball v. City of Sioux Falls,* 71 S.D. 35, 20 N.W.2d 873 (1945).

from the plaintiff the burden of identifying the source of the DES which allegedly injured her and would shift to each defendant, the burden of proving it was not the source of the DES to which plaintiff was exposed.

Defendants may argue that the practical difficulty presented by this rule is that certain defendants may not be able to "prove themselves out" of the case, and may be found liable without any proof their product caused this plaintiff's injuries. Although this is a possibility, the drafters of the Restatement Second of Torts anticipated this problem in comment h of Section 433B(3)[12] which nevertheless, allows shifting the burden of proof even though all possible tortfeasors may not be joined. The California Supreme Court in *Sindell v. Abbott Laboratories*, 26 Cal.3d 588, 163 Cal. Rptr. 132, 607 P.2d 924 (Cal.1980), a factually similar case, stated the reasons why the *Summers v. Tice, supra,* rationale, codified in Section 433(B)(3), would still apply even though all tortfeasors may not be present in a case:

> In our contemporary complex industrialized society, advances in science and technology create fungible goods which may harm consumers and which cannot be traced to any specific producer. The response of the courts can be either to adhere rigidly to prior doctrine, denying recovery to those injured by such products, or to fashion remedies to meet these changing needs. Just as Justice Traynor in his landmark concurring opinion in *Escola v. Coca Cola Bottling Company* (1944) 24 Cal.2d 453, 467–468, 150 P.2d 436, recognized that in an era of mass production and complex marketing methods the traditional standard of negligence was insufficient to govern the obligations of manufacturer to consumer, so should we acknowledge that some adaptation of the rules of causation and liability may be appropriate in these recurring circumstances. The Restatement comments that modification of the Summers rule may be necessary in a situation like that before us.... [A] modification of the rule in *Summers* is warranted.

*Sindell, supra,* 607 P.2d at 936.[13]

In the present case there are no pharmaceutical records on which plaintiff can draw. The drug was distributed widely in generic form, and it is almost certain more than one manufacturer supplied the pharmacy which sold the DES to plaintiff's mother.[14] The court in *Sindell* wrote persuasively on the plaintiff's inability to pinpoint the product source in DES cases:

> [p]laintiff is not at fault in failing to provide evidence of causation, and although the absence of such evidence is not attributable to the defendants either, their conduct in marketing a drug the effects of which are delayed for many years played a significant role in creating the unavailability of proof. *Sindell,* 607 P.2d at 936.

In this case it is not altogether clear that both sides are equally disadvantaged in their ability to determine the source of the DES. Defendants seem to be in a better position to identify the product source. Several defendants have shown the Court

**12.** [I]t is possible that cases may arise in which some modification of the rule stated may be necessary because of complications arising from the fact that one of the actors involved is not or cannot be joined as a defendant, or because of the effect of lapse of time, or because of substantial differences in the character of the conduct of the actors or the risks which they have created. Since such cases have not arisen, and the situations which might arise are difficult to forecast, no attempt is made to deal with such problems in this Section. The rule stated in Subsection (3) is not intended to preclude possible modifications if such situations call for it.

Restatement of Torts 2d Section 433B comment h.

**13.** The South Dakota Supreme Court has frequently adopted the reasoning of the California Supreme Court. E.g. *Weltz v. Bd. of Educ. of Scotland Sch. Dist.,* 329 N.W.2d 131 (S.D.1982); *State v. Soft,* 329 N.W.2d 128 (S.D.1982); from 1966 to May of 1983, the South Dakota Supreme Court has cited either the California Supreme Court or the California Code seventy-nine times.

**14.** Deposition of Charles Van De Walle (pharmacist) pp. 9–12, 15.

that extensive and detailed records exist which indicate marketing and manufacturing time periods. Indeed, the Section 433B burden of proof rule may not produce perfect results in all cases, but it represents a reasonable application of the rationale which supports strict liability, given the unusual nature of the facts and circumstances presented here. There is ample justification for applying the modified 433B(3)(h) Restatement analysis adopted in *Sindell*.

An order denying the motion of defendants for summary judgment was entered earlier. At the time, the Court reserved the right to file a memorandum opinion explaining the reasons for the decision. This memorandum shall be filed with the clerk forthwith and constitute the basis for the order denying defendants' motion for summary judgment.