James W. BRADLEY and Thelma Bradley, Plaintiffs,

v.

FIRESTONE TIRE AND RUBBER COMPANY, an Ohio corporation; Firestone Steel Products Division, an Ohio corporation and wholly owned subsidiary foreign corporation owned by Defendant Firestone Tire and Rubber Company; Budd Company, a Pennsylvania corporation; Kelsey-Hayes Company, a Delaware corporation; Goodyear Tire & Rubber Company, an Ohio corporation; and Defendants A, B, and C Corporations or other legal entities who by the manufacture of the RH5° multipiece ring and rim caused the Plaintiffs severe and crippling injuries on March 20, 1979 whose true names are otherwise unknown at this time but will be added by way of amendment when ascertained, Defendants.

No. Civ. 82–5021.

United States District Court, D. South Dakota, W.D.

Aug. 21, 1984.

James Robbennolt, Duncan, Olinger, Srstka, Lovald & Robbennolt, P.C., Pierre, S.D., for plaintiffs.

Stanley E. Siegel, Siegel, Barnett & Schutz, Aberdeen, S.D., for Firestone Tire & Rubber and Firestone Steel Products Div.

Robert C. Riter, Jr., Riter, Mayer, Hofer & Riter, Pierre, S.D., for Budd Co.

Thomas E. Simmons, Bangs, McCullen, Butler, Foye & Simmons, Rapid City, S.D., and Harry J. Pearce, Pearce, Anderson & Durick, Bismarck, N.D., for Kelsey-Hayes Co.

David A. Gerdes, May, Adam, Gerdes & Thompson, Pierre, S.D., for Goodyear Tire and Rubber Co.

## MEMORANDUM OPINION

BOGUE, Chief Judge.

The Plaintiffs have brought this products liability action seeking damages for injuries allegedly suffered by Mr. Bradley in an accident involving a multi-piece truck wheel. The action is brought against five named Defendants and Defendants A, B, and C corporations or other legal entities whose true names are otherwise unknown.

Each of the named Defendants has moved for summary judgment based on the admitted inability of the Plaintiffs to identify the manufacturer of the multi-piece wheel assembly which it is alleged was responsible for the injuries suffered by Mr. Bradley.

## STATEMENT OF FACTS

At the time of his accident, the Plaintiff James W. Bradley was employed by Bradley Sodding, a company owned by the Plaintiff's brother, Mark Bradley. The accident took place on premises leased by Bradley Sodding and the wheel involved was owned by Bradley Sodding. Following the accident, the wheel was retained by the Plaintiff's employer, but was subsequently shipped to the South Dakota School of Mines and Technology in Rapid City, South Dakota for examination. The wheel was later turned over to the Plaintiff's employer's workmen's compensation insurance carrier and was subsequently lost.

The Plaintiffs have indicated in their Answers to Interrogatories of Defendant Goodyear Tire and Rubber Company that the subject wheel assembly is unavailable for inspection or for any other purpose associated with this action and that they are unable to identify the manufacturer of the subject wheel. (Plaintiffs' Answers to Interrogatories Nos. 15 and 16 dated November 9, 1983). The Plaintiffs claim that the wheel rim is of the L design, either LB or LW.

Each of the manufacturers involved in this motion produced its multi-piece wheel assembly pursuant to its own patent, and each manufacturer makes its product with its own distinctive emblem making the manufacturer readily identifiable upon simple visual inspection of the product.

The Defendant Kelsey-Hayes Co. denies, under oath, ever manufacturing a multi-piece wheel of either the LB or LW type. The Plaintiffs admit this in their brief. Therefore, summary judgment is granted to Defendant Kelsey-Hayes Company.

## DECISION

A motion for summary judgment will be granted if there exists no material issue of fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). When a motion for summary judgment is made, "an adverse party may not rest upon the mere allegations or denials of

his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

This is a products liability action. Mr. Bradley claims that a tire rim and wheel manufactured by one of the Defendants blew up in his face. The Plaintiffs base their products liability case on the following theories: 1) defective design; 2) failure to warn; 3) strict liability; 4) negligence; and 5) willful and wanton negligence. The Plaintiffs admit that the subject wheel assembly is unavailable for inspection or for any other purpose associated with this action and that they are unable to identify the manufacturer of the subject wheel.

"It is a fundamental principle that a plaintiff must prove, as an essential element of his case, that the defendant manufacturer actually made the particular product in question." *Gray v. U.S.*, 445 F.Supp. 337, 338 (S.D.Tex.1978); *Shaffer v. Honeywell, Inc.*, 249 N.W.2d 251 (SD 1976); Annot., 78 A.L.R.2d 460, 504 § 21; Annot., 51 A.L.R.3d 1344, 1351 § 3.

■ However, the Plaintiffs have advanced four theories to overcome their inability to prove that the Defendants made the product that caused Plaintiff's injuries. These are: 1) alternative liability; 2) concert of action; 3) enterprise liability; and 4) market share liability. Because this is a diversity action, a United States District Court must follow the substantive law of the forum. In the absence of a controlling rule as set forth either by statute or by the state's highest court, the federal district court must apply the rule it believes the state Supreme Court would adopt. *CIR v. Bosch*, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967).

## ALTERNATIVE LIABILITY

■ The theory of alternative liability is embodied in § 433B(3) of the Restatement (Second) of Torts (1979), which reads as follows:

Where the conduct of two or more actors is tortious, and it is proved that harm has been caused to the plaintiff by only one of them, but there is uncertainty as to which one has caused it, the burden is upon each such actor to prove that he has not caused the harm.

The reason for the rule is the "injustice of permitting proved wrongdoers, who among them have inflicted an injury upon the entirely innocent plaintiff, to escape liability merely because the nature of their conduct and the resulting harm has made it difficult or impossible to prove which of them has caused the harm." *Id.* § 433B, comment f.

"Under alternative liability, however, all the possible wrongdoers responsible for the injury must be before the Court, and the negligent acts must have been committed simultaneously." *Starling v. Seaboard Coastline Railroad Co.*, 533 F.Supp. 183, 188 (S.D.Ga.1982). This theory is inapplicable in this case because each of the Defendants must have acted tortiously. Here, only one defendant made the tire rim in question. This rule "has no application to cases of alternative liability, where there is no proof that the conduct of more than one actor has been tortious at all." Restatement (Second) of Torts, § 433B comment g. Also, the Defendants are not in a better position to offer evidence to determine which Defendant caused the injury. The Defendants stamped their identification mark on the rim and the rim was lost through no fault of the Defendants.

This case should be distinguished from *McElhaney v. Eli Lilly & Co.* 564 F.Supp. 265 (D.SD 1983). In *McElhaney*, the Court dealt with the drug DES, which is a fungible good and which could not be traced to any specific producer. *Id.* at 270. This is not the case here. Here, the Defendants stamped their identification number on the rim.

## CONCERT OF ACTION

■ The concert of action theory of liability is described in § 876 of the Restatement (Second) of Torts:

For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he

(a) does a tortious act in concert with the other or pursuant to a common design with him, or

(b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or

(c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

"[M]ere common plan, design or even express agreement is not enough for liability in itself; there must be acts of a tortious character in carrying it into execution. *Id.* § 876, comment b.

Thus, the plaintiff "would have to prove in addition to a parallel course of conduct among defendants, evidence of some agreement—express or tacit—a common plan among manufacturers not to test adequately or not to warn of dangers that were known." *Ryan v. Eli Lilly & Co.*, 514 F.Supp. 1004, 1016 (D.S.C.1981).

The Defendants, in their affidavits state that the "only industry-wide activity or cooperation concerning multi-piece rims is conformance with the dimensional specifications published by the Tire and Rim Association to provide that multi-piece rim and wheels and dimensionally compatable with truck and bus tires." (Affidavits of Robert E. Lee (Firestone), J. Edward Haag (Budd), and Gerhart L. Gerbech (Goodyear)).

By affidavit, Mr. Bradley has stated that "he is prepared to introduce evidence that there existed an insufficient industry wide standard of safety as to the manufacture of multi-piece tire rims and that the Defendants were all tort-feasors involved in the design, manufacture and marketing of such rims which were generic in nature to the extent that generally recognized design characteristics were used through the industry." (Affidavit of James W. Bradley). This is insufficient to constitute a genuine issue of fact. *See* Fed.R.Civ.P. 56(e). Therefore, the Plaintiff's claim fails as to this theory.

## ENTERPRISE THEORY

A third theory upon which the Plaintiff relies is the concept of industry-wide liability or "enterprise liability." "This theory was suggested in *Hall v. E.I. Du Pont de Nemours & Co., Inc.*, 345 F.Supp. 353 (E.D.N.Y.1972).

In that case, the Plaintiffs were thirteen children injured by the explosion of blasting caps in twelve separate incidents which occurred in ten different states between 1955 and 1959. The Defendants were six blasting cap manufacturers, comprising virtually the entire blasting cap industry in the United States, and their trade association. There were, however, a number of Canadian blasting cap manufacturers which could have supplied the caps. The gravamen of the complaint was that the practice of the industry of omitting a warning on individual blasting caps and of failing to take other safety measures created an unreasonable risk of harm, resulting in the Plaintiffs' injuries. The complaint did not identify a particular manufacturer of a cap which caused a particular injury. The Court reasoned as follows: there was evidence that Defendants, acting independently, had adhered to an industry-wide standard with regard to the safety features of blasting caps, that they had in effect delegated some functions of safety investigation and design, such as labelling, to their trade association, and that there was industry-wide cooperation in the manufacture and design of blasting caps. In these circumstances, the evidence supported a conclusion that all Defendants jointly controlled the risk. Thus, if Plaintiffs could establish by a preponderance of the evidence that the caps were manufactured by one of the Defendants, the burden of proof as to causation would shift to all the Defendants. The Court noted that this theory of liability applied to industries composed

of a small number of units, and that what would be fair and reasonable with regard to an industry of five or ten producers might be manifestly unreasonable if applied to a decentralized industry composed of countless small producers. *Sindell v. Abbott Laboratories,* 26 Cal.3d 588, 163 Cal.Rptr. 132, 142, 607 P.2d 924, 934 (1980).

Under the enterprise liability, "the industry-wide standard becomes itself the cause of plaintiff's injury, just as defendants' joint plan is a cause of injury in the traditional concert of action plea. Each defendant's adherence perpetuates this standard, which results in the manufacture of the particular, unidentifiable injury-producing product. Therefore, each industry member has contributed to plaintiff's injury." *Id.,* 163 Cal.Rptr., at 143, 607 P.2d, at 935. Seven requirements have been suggested for a cause of action based upon industry-wide liability or "enterprise liability". These are:

1. There existed an insufficient, industry-wide standard of safety as to the manufacture of the product.

2. Plaintiff is not at fault for the absence of evidence identifying the causative agent, but, rather, this absence of proof is due to defendant's conduct.

3. A generically similar defective product was manufactured by all the defendants.

4. Plaintiff's injury was caused by this defect.

5. Defendants owed a duty to the class of which plaintiff was a member.

6. There is clear and convincing evidence that plaintiff's injury was caused by a product made by one of the defendants. For example, the joined defendants accounted for a high percentage of such defective products on the market at the time of plaintiff's injury.

7. All defendants were tortfeasors.

*Id.;* Comment, *DES and a Proposed Theory of Enterprise Liability,* 46 Fordham L.Rev. 963 (1978).

We do not think this theory is applicable in this case. First of all, the absence of proof is not due to the Defendants conduct. The Defendants stamped their identification on the rim. Second, the plaintiff has failed to show, by affidavit or otherwise, that all multi-piece tire rims of the LB or LW type were defective. Thus, the Plaintiffs' cause of action fails as to this theory.

## MARKET SHARE

■ The market share theory of liability was created by the California Supreme Court in *Sindell v. Abbott Laboratories,* 26 Cal.3d 588, 163 Cal.Rptr. 132, 607 P.2d 924 (1980), *cert. denied* 449 U.S. 912, 101 S.Ct. 285, 66 L.Ed.2d 140 (1980). Under the market share theory of liability, "[e]ach defendant will be held liable for the proportion of the judgment represented by its share of the market unless it demonstrates that it could not have made the product which caused Plaintiff's injuries." *Id.,* 163 Cal.Rptr. at 145, 607 P.2d, at 937.

However, the facts do not warrant use of the market share theory of liability in this case. Here, the absence of evidence is not attributable to the Defendants, but to the Plaintiff's employer's workman's compensation carrier. Thus, one of the main policy reasons for the adoption of the market share theory is not present in this case. *See id.,* 163 Cal.Rptr., at 144, 607 P.2d, at 936. Also, in *Sindell,* all of the manufacturers of DES produced a defective product because DES itself was found to be harmful.

The Plaintiff has failed to show that all multi-piece tire rims of the LB or LW type were defective. Thus, this theory is not applicable to this case. Therefore, the Defendants' Motion for Summary Judgment is granted.